CASEY R. FRONK (Illinois State Bar No. 6296535)
*PRO HAC VICE* APPLICATION PENDING
FronkC@sec.gov
Counsel for Plaintiff
U.S. Securities and Exchange Commission
351 South West Temple, Suite 6.100
Salt Lake City, UT 84101-1950
Tel.: (801) 524-5796
Fax: (801) 524-3558

Local Counsel:
GARY Y. LEUNG (Cal. Bar No. 302928)
leungg@sec.gov
U.S. Securities and Exchange Commission
444 S. Flower Street, Suite 900
Los Angeles, CA 90071
Tel: (323) 965-3213
Fax: (213) 443-1903

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Plaintiff,<br>　　vs.<br><br>RICHARD JONATHAN EDEN, an individual,<br><br>　　　　Defendant,<br><br>　　　　and<br><br>EDEN&HILE, INC., a private California corporation,<br><br>　　　　Relief Defendant. | Case No.:<br><br><br><br>**COMPLAINT** |

1

Plaintiff, Securities and Exchange Commission ("Commission" or "SEC"), alleges as follows:

## SUMMARY OF THE ACTION

1. This matter concerns recidivist conduct by Defendant Richard Eden ("Eden"), who is subject to a December 2019 injunction in this district from Judge Wilson prohibiting him from violating, *inter alia*, the broker-dealer registration requirements of Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act"); and a Commission Order barring his association with, *inter alia*, any broker.

2. After the resulting injunction and Commission bar were imposed upon him, Eden operated as a broker in connection with the securities offerings of multiple companies. During that time, he was neither registered with the Commission as a broker or dealer nor associated with an entity registered with the Commission as a broker or dealer. Eden engaged in this conduct willfully, or at least recklessly.

3. By engaging in this conduct, as further described herein, Eden violated and, unless restrained and enjoined by this Court, may continue to violate Sections 15(a)(1) and 15(b)(6)(B)(i) of the Exchange Act.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to Sections 21(d) and 27(a) of the Exchange Act [15 U.S.C. § 78u(d); 78a(a)]; and 28 U.S.C. § 1331.

5. Venue in this District is proper because Eden is found in, inhabits, and/or transacts business in the Central District of California, and because one or more acts or transactions constituting the violations occurred in the Central District of California.

6. The Commission brings this action pursuant to Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. § 78u(d); 78u(e)] to enjoin such acts, practices, and courses of business, and to obtain civil money penalties and such other and further relief as this Court may deem just and appropriate.

7. Eden was involved in the offer and sale of the securities, as that term is defined under Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)], issued by multiple companies, including the securities of Seneca Capital Group, LP; Kumberland Campground Resorts, LLC; and Paddle Trail Campground on the Green River, L.L.C.

8. Eden, directly or indirectly, made use of the mails or means or instrumentalities of interstate commerce in connection with the conduct alleged in this Complaint.

## DEFENDANT AND RELIEF DEFENDANT

9. **Richard "Rich" Jonathan Eden**, age 66, is a resident of Los Angeles, California. Eden was engaged to solicit prospective investors to invest in securities issued by multiple companies.

10. Eden was previously a defendant in another action brought by the Commission in this district, *see SEC v. Eden* et al., 2:19-cv-09358-SVW-SK (C.D. Cal.), and was enjoined from, *inter alia*, violating, directly or indirectly, Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)] by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, to effect transactions in, or induce or attempt to induce the purchase or sale of, securities while not registered with the Commission as a broker or dealer or while not associated with an entity registered with the Commission as a broker or dealer. (*See* Ex. A, Dec. 12, 2019 Final Judgment.)

11. On December 20, 2019, the Commission, pursuant to Section 15(b)(6) of the Exchange Act [15 U.S.C. § 78o(b)(6)], further barred Eden from association with, *inter alia*, any broker. (*See* Ex. B, Dec. 20, 2019 Commission Order.)

12. **Eden&Hile, Inc.**, ("Eden&Hile") is a private California corporation believed to be operated from Eden's Los Angeles residence and is at least nominally controlled by one or more members of Eden's family. Eden&Hile received commission funds on behalf of Eden.

## RELATED INDIVIDUALS AND ENTITIES

13. **Stephen Michael Thompson**, age 73, is last known to be a resident of Beverly Hills, California. Thompson has been the subject of multiple securities-related enforcement actions and was recently named a defendant in the pending case *SEC v. LFS Funding Limited Partnership, et al.,* No. 2:21-cv-04211-SSS-MAR (C.D. Cal.) (herein, "*LFS Funding*"). Thompson is believed to control numerous business entities, often through nominees, and to have connections to the issuers whose securities Eden solicited.

14. **Dale Jay Engelhardt**, age 57, is believed to be a resident of the Los Angeles area. Engelhardt, who once held FINRA Series 7 and 63 licenses, has been subject to multiple SEC enforcement actions, most recently as a defendant in *LFS Funding*. Engelhardt is believed to operate, via nominee Alex Forester, Brookdale Consulting LLC, a boiler room business which has raised investor funds for multiple securities issuers, at least some of which are associated with Stephen Thompson.

15. **Alex Duain Forester (f/k/a Duain Vincent Preitz)**, age 71, was last known to reside in Simi Valley, California. Forester, who once held FINRA Series 7 and 63 licenses, was a defendant in a prior Commission enforcement action brought in this district, *see SEC v. Alex Forester*, et al., No. 2:20-cv-09813-DMG-AFM (C.D. Cal.), and was also the subject of a 2012 Desist and Refrain Order

4

issued by the California Business, Transportation and Housing Agency, Department of Corporations for selling unregistered stock. Forester has served as the nominee principal of business entities associated with Thompson and Engelhardt, including, as it pertains to this action, Engelhardt's Brookdale Consulting LLC.

16. **Alan David Libman**, age 78, is believed to be a Canadian citizen and current or former Canadian lawyer currently residing in Canada. Libman has been a subject of prior SEC enforcement actions and at least one parallel criminal prosecution. Libman was for some time Eden's immediate supervisor at one of Engelhardt's Brookdale Consulting LLC boiler room call centers.

17. **Brookdale Consulting LLC**, is a California company believed to operate one or more boiler rooms in the Los Angeles area and to be under the *de facto* control of Engelhardt. Brookdale Consulting is the "managing partner" of securities issuer Seneca Capital Group, LP; was named as a relief defendant in *LFS Funding*; and made commission payments to or for the benefit of Eden in connection with the conduct described herein.

18. **Financial Logistics, LLC**, is a Wyoming company believed to be controlled, via nominees, by Thompson. Financial Logistics, LLC made commission payments to or for the benefit of Eden in connection with the conduct described herein.

19. **Rocky Mountain Precious Metals, LLC**, is a Wyoming company believed to be controlled, via nominees, by Thompson and made commission payments to or for the benefit of Eden in connection with the conduct described herein.

20. **Seneca Capital Group, Limited Partnership**, is a Wyoming partnership whose general partner is Brookdale Consulting LLC. Seneca Capital Group. Seneca Capital Group offered up to at least 25 "limited partnership units"

to investors at $100,000 per unit. These limited partnership units are securities, as that term is defined under Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)].

21. **Kumberland Campground Resorts, LLC**, is a Kentucky limited liability company. Kumberland Campground Resorts offered up to at least 20 "LLC Membership Units" to investors at $65,000 per unit. These limited liability company units are securities, as that term is defined under Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)].

22. **Paddle Trail Campground on the Green River, L.L.C.**, is a Kentucky limited liability company. Paddle Trail Campground offered up to at least 30 "membership units" to investors at $100,000 per unit. These membership units are securities, as that term is defined under Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)].

## EDEN'S VIOLATIONS OF THE FEDERAL SECURITIES LAWS

23. During or about mid-2019, while he was in settlement discussions with Commission staff regarding a potential resolution of the Commission enforcement action which would thereafter be brought as *SEC v. Eden* et al., 2:19-cv-09358-SVW-SK (C.D. Cal.), Eden began looking for employment.

24. In connection with this employment search, Eden responded to a Craigslist advertisement for a sales position. Following Eden's inquiry, he was interviewed by Libman on behalf of Brookdale Consulting, and was thereafter offered a position with Brookdale Consulting soliciting investors to purchase securities.

25. In mid-2019, Eden began working for Libman and Brookdale Consulting as an "opener" in connection with the Seneca Capital Group securities offering. Thereafter, Eden participated in additional securities offerings.

26. In his role as an opener for the Seneca Capital Group securities offering, Eden contacted prospective investors from lead lists, sought to establish rapport with them, described the investment opportunity and potential returns, caused printed materials to be sent to them (if requested), and, in some circumstances referred them to Libman, a "closer," so that Libman could attempt to secure these investors' investments in the offered Seneca Capital Group securities.

27. After Libman left Brookdale Consulting in late 2019, Eden transitioned into a "finder/closer" role responsible for both identifying potential investors and attempting to secure their investments in the offered Seneca Capital Group securities.

28. For his work as an opener, Eden was paid commissions equaling at least 7.5 percent of each investment made by an investor he solicited. For his work as a finder/closer, Eden was paid commissions equaling between 10 and 15 percent of each investment made by an investor he solicited.

29. After the Seneca Capital Group securities offering concluded around August 2020, Eden began working for Thompson. For his work for Thompson, Eden was paid through Thompson's companies—Financial Logistics LLC and Rocky Mountain Precious Metals LLC. In this role, Eden received a "draw" in anticipation of his eventually working on two planned campground-related securities offerings (by Kumberland Campground Resorts and by Paddle Trail Campground).

30. While working for Thompson, Eden processed calls from Seneca Capital Group investors, performed research into the recreational vehicle/camping industry, and also raised money from investors for a real estate transaction that Thompson's son was leading (but which was subsequently terminated).

31. Once the Kumberland Campground Resorts and Paddle Trail Campground securities offerings began during or around mid 2021, Eden continued to perform market research work for Thompson and also made calls to prospective investors, in which, upon information and belief, Eden solicited those investors to invest in the Kumberland Campground Resorts and Paddle Trail Campground securities offerings.

32. For his work on the Seneca Capital Group, Kumberland Campground Resorts, Paddle Trail Campground, and Thompson's son's securities offerings (collectively, the "subject securities offerings"), Eden received, either directly or indirectly via Relief Defendant Eden&Hile, Inc., at least the payments summarized in the table below:

| Payor/Payee | Date Range of Payments | Total Payments ($) |
|---|---|---|
| **Payments to Eden:** | | |
| Brookdale Consulting LLC | 05/30/19 – 07/09/19 | $10,875.00 |
| Financial Logistics, LLC | 12/04/20 | $6,000.00 |
| **Payments to Eden&Hile, Inc.:** | | |
| Brookdale Consulting LLC | 07/12/19 – 07/24/20 | $272,625.00 |
| Financial Logistics, LLC | 08/07/20 – 02/19/21 | $51,750.00 |
| Rocky Mountain Precious Metals, LLC | 03/19/21 | $10,000.00 |
| **Total** | 05/30/19 - 03/19/21 | $351,250.00 |

33. Eden operated as a broker in connection with the subject securities offerings while (a) he was neither registered with the Commission as a broker or dealer nor while he was associated with an entity registered with the Commission as a broker or dealer and (b) while he was subject to a Commission bar from associating with any broker.

34. For his work as a broker on the subject securities offerings, Eden obtained at least $351,250.00 in ill-gotten gains.

35. Eden knew, or was at least reckless in not knowing, that his work in connection with the subject securities offerings was in violation of the federal

securities laws and the court and commission orders attached hereto as Exhibit A and Exhibit B.

## FIRST CLAIM FOR RELIEF

**Violations of Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)]**

36.     The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1–35 inclusive, as if they were fully set forth herein.

37.     By engaging in the conduct described above, Eden:

a.     engaged in the business of effecting transactions in securities for the account of others; and

b.     directly or indirectly, made use of the mails or the means or instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, securities without being registered as a broker or dealer with the Commission or associated with a broker or dealer registered with the Commission.

38.     By reason of the foregoing, Eden violated and, unless enjoined, will continue to violate Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

## SECOND CLAIM FOR RELIEF

**Violations of Section 15(b)(6)(B)(i) of the Exchange Act [15 U.S.C. § 78o(b)(6)(B)(i)]**

39.     The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1–35, inclusive, as if they were fully set forth herein.

40.     Eden, who has previously been made the subject of a Commission bar from associating with, among others, any broker, with such previous bar being in effect, willfully or recklessly, directly or indirectly, made use of the mails or the means or instrumentalities of interstate commerce to effect transactions in, or to

induce or attempt to induce the purchase and sale of, securities (*i.e.*, Eden willfully or recklessly acted as a broker in violation of said Commission bar).

41. By reason of the foregoing, Eden violated and, unless restrained and enjoined, will continue to violate Section 15(b)(6)(B)(i) of the Exchange Act [15 U.S.C. 78o(b)(6)(B)(i)].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

### I.

Permanently restraining and enjoining Eden from, directly or indirectly, engaging in conduct in violation of Section 15(a)(1) of the Exchange Act [15 U.S.C. §78o(a)(1)];

### II.

Permanently restraining and enjoining Eden from, directly or indirectly, engaging in conduct in violation of Section 15(b)(6)(B)(i) of the Exchange Act [15 U.S.C. 78o(b)(6)(B)(i)];

### III.

Permanently restraining and enjoining Eden from, directly or indirectly, including, but not limited to, through any entity owned or controlled by Eden, soliciting any person or entity to purchase or sell any security;

### IV.

Ordering Eden and Relief Defendant Eden&Hile, Inc., to disgorge all ill-gotten gains or unjust enrichment derived from the activities set forth in this Complaint, together with prejudgment interest thereon;

### V.

Ordering Eden to pay civil monetary penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

**VI.**

Retaining jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court; and

**VII.**

Granting such other and further relief as this Court may deem just, equitable, or necessary in connection with the enforcement of the federal securities laws and for the protection of investors.

Dated:  July 14, 2022

/s/ Gary Y. Leung
Gary Y. Leung
Casey R. Fronk

*Attorneys for Plaintiff*
*Securities and Exchange Commission*